IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| AVERY L. SMITH, | : | |
| Plaintiff, | : | |
| VS. | : | Civil Action File No. |
| | : | 7 : 09-CV-97 (HL) |
| SHIRLEY LEWIS, JEREMY | : | |
| KOMPOLTOWICS, and | : | |
| Sheriff CHRIS PRINE, | : | |
| Defendants. | : | |

## RECOMMENDATION

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 is plaintiff's motion for summary judgment (Doc. 23) and a motion for summary judgment filed on behalf of defendant Shirley Lewis. (Doc. 32).

*Plaintiff's Motion for Summary Judgment/Default Judgment (Doc. 23)*

Upon considering this motion filed by plaintiff which is titled as a motion for summary judgment, it appears to be more appropriately considered as a motion for default judgment. In this motion plaintiff asserts that defendants Sheriff Prine and Officer Kompoltowics are in default for failing to file an answer within sixty days.

In an order dated August 7, 2009, this complaint was ordered served upon the defendants. Under Rule 12(a) of the Federal Rules of Civil Procedure, these defendants would have had sixty days from the date in which they timely waived service under Rule 4(d) in which to file an answer or dispositive motion. According to the record, the summons were originally issued on August 10, 2009. The clerk of court re-issued the service of summons as to defendants Prine and Kompoltowics on November 23, 2009. However, Defendants Prine and Kompoltowics never waived service, and

were not personally served until December 17, 2009. Under Rule 12(a)(1), they had 21 days to file an answer. Defendants Prine and Kompoltowics filed an answer on December 18, 2009, well within the 21 days. Thus the answer was timely filed, and default judgment is not appropriate in this action. It is therefore the RECOMMENDATION of the undersigned that plaintiff's motion for summary judgment/default be **DENIED**.

*Defendant Lewis' Motion for Summary Judgment (Doc. 32)*

Plaintiff alleges that Shirley Lewis, a registered nurse who provided nursing care to inmates housed at Lowndes County Jail, was deliberately indifferent to his serious medical needs in violation of his constitutional rights. Specifically, plaintiff alleges that he broke his ankle on April 26, 2009; that nurse Lewis treated him only for a sprained ankle, did not order an x-ray immediately, and instead waited several days, or until April 30, 2009, to take the x-ray, which did reveal a fracture. Plaintiff alleges this delay caused him irreparable injury to his ankle, requiring surgery.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235 (11th Cir. 1992)(citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d

2

604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Acts or omissions must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25 (1993). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *McElligott v. Foley*, 182 F.3d 1248, 1256-1257 (11th Cir.

3

1999).

The medical care provided to an inmate must be reasonable. *Patterson v. Riddle*, 407 F. Supp. 1035 (E.D. Va. 1976). However, "it is not required that the medical care provided to the inmate be perfect, the best obtainable, or even very good." *Estelle*, 429 U.S. at 106. *See also Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991); *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D. Ga. 1980); *Hawley v. Evans*, 716 F. Supp. 601, 603 (N.D. Ga.1989).

The Eleventh Circuit has noted that, "where a prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Murphy v. Turpin*, 159 Fed. Appx. 945 at fn. 4, (11th Cir. 2005), citing *Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). "Thus, where an inmate receives medical care, but desires a different mode of treatment, the care provided does not amount to deliberate indifference." *Id.*

In *Estelle v. Gamble*, *supra*, the Supreme Court cautioned that not every allegation of inadequate medical treatment states a constitutional violation. *Estelle* at 105. Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment. *Id.* at 106 (stating "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A section 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." *Brinton v. Gaffney*, 554 F.Supp. 388, 389 (E.D.Pa.1983).

"The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical

4

malpractice, and as such the proper forum is the state court." *Estelle, supra*, at 107.

According to the initial affidavit submitted by defendant Lewis, (Doc. 32 Exhibit A), plaintiff was apparently injured by a fall on the night of April 26, 2009. Lewis was not on duty at the time, but was notified of the injury when she came in to work the following morning. Plaintiff was in the infirmary at the time, and told her he had broken his ankle. After assessing Inmate Smith's injury, Nurse Lewis made a clinical decision that he had sprained his ankle. An x-ray was not provided at that time because Nurse Lewis did not feel the bone had been broken. Further, Nurse Lewis did not feel an x-ray would have been effective immediately following the injury because of the swelling around the ankle. X-rays are not as effective when there is swelling involved. (Id.; see also Doc. 32 Affidavit of Bankole Asebiomo, M.D., Exhibit B). Nurse Lewis began treating the swelling so that a more useful x-ray could eventually be taken, including providing plaintiff with an ice pack with instructions to keep the ice pressed to the injured area and to keep his foot elevated to help reduce the swelling. Motrin 600mg was immediately given to plaintiff for his pain and was available to him thereafter every six hours as needed. (Doc. 32 Exhibit A).

Nurse Lewis made an informed clinical decision that plaintiff's injury was not a broken bone. There was swelling, but no clear indication that a bone had been broken. Specifically, there was no circulation impairment, no obvious deformity, plaintiff could still put weight on it (he was standing up banging on the door throughout his time in the infirmary), he was not in excruciating pain, and he was not following medical orders intended to help make the ankle better. (Doc. 32 Exhibit A).

Plaintiff was removed from the general population and kept in a medical observation/step down cell so that the injury could be monitored, treated, and so it would not be aggravated being

5

around other prison members. Plaintiff was checked on approximately every thirty minutes by officers and nurses. Further, everything was brought to plaintiff. The only walking that was necessary was to go see a doctor. Inmate Smith was not returned to the general population until August 6, 2009, after he had fully healed, could walk, and was begging to return to the general population. Thus, for over three months, Inmate Smith was placed in a surrounding that would allow him to heal properly. (Doc. 32 Exhibit A).

During this time plaintiff was observed by medical staff. (Doc. 32 SHP Medical Records, pp. 34-52; attached to Nurse Lewis's Affidavit). On April 27, 2009, plaintiff was observed standing up and banging on the door. He also failed to keep his foot elevated at all times and failed to keep the ice pack applied to his injury. When educated on the purpose of keeping the ice pack applied to his injury, plaintiff responded "I meant not to use it." There was never any distress noted. On April 28, 2009, there were no signs of distress and no complaints from plaintiff. When offered his ice pack, he refused it. On April 29, 2009, plaintiff refused the ice pack offered to him and failed to keep his foot elevated. There were no signs of acute distress and no complaints from plaintiff Smith. (Doc. 32 Exhibit A).

Nurse Lewis ordered an x-ray for Inmate Smith to be taken on April 30, 2009, which was the first available date an x-ray could have been provided at the Jail. The x-ray indicated that plaintiff's ankle had been broken. Following that x-ray, Nurse Lewis immediately scheduled an appointment for plaintiff to be seen by Dr. Curt Starling, an orthopedic surgeon. An appointment was scheduled for Monday, May 4, 2009, which was Dr. Starling's first available day. (Doc. 32 Exhibit A).

Plaintiff was examined by Dr. Starling on Monday, May 4, 2009. (Doc. 32 Exhibit A; see also Doc. 32 Dr. Starling's Medical Records). No surgery was performed. Plaintiff was instructed to keep his foot elevated to try and minimize the swelling. No medications (pain or otherwise) were prescribed. Dr. Starling also wanted Inmate Smith to keep off his leg, and therefore was given crutches. Inmate Smith was provided with crutches at all times thereafter. (Id.)

Dr. Starling examined Inmate Smith again on May 8, 2009. No surgery was performed. It was noted that the swelling had decreased since the last visit, and it was safe to proceed with surgery on May 11. Dr. Starling prescribed no medications (pain or otherwise). Dr. Starling operated on plaintiff on May 11, 2009, repairing the broken bone. Dr. Starling prescribed a narcotic to help with plaintiff's pain following the surgery. Inmate Smith was provided with a narcotic for at least eight days following the surgery, in addition to the Ibuprofen he had been receiving. The narcotic and Ibuprofen was available to plaintiff at all times until the prescriptions ran out. The only time plaintiff did not get medication for his pain following his injury is when he refused it. (Doc. 32 Exhibit A; Doc 32 Dr. Starling's Medical Records).

Plaintiff returned to Dr. Starling's office on May 21, 2009, and it was noted that there were no complications or problems with the recovery. Plaintiff returned to Dr. Starling's office on June 11, 2009, and there were no problems or complications noted. On June 25, 2009, plaintiff's cast was removed and he was provided with a walking boot. There were no problems or complications noted. (Doc. 32 Exhibit A; Doc 32 Dr. Starling's Medical Records).

On July 16, 2009, plaintiff was examined by Dr. Starling for the last time. During that exam, it was noted "the fracture appears to be clinically and radiographically healed at this point, therefore

7

the patient will be discharged from care with follow up as needed." Dr. Starling informed Nurse Lewis that plaintiff could begin wearing normal athletic shoes at that point. Prior to that date, plaintiff was required to wear the cast boot and walking boot to help with recovery. (Doc. 32 Exhibit A; Doc 32 Dr. Starling's Medical Records).

Since receiving care and treatment for his injured ankle, plaintiff has not filled out any sick call slips complaining of his ankle, pain, or any type of permanent damage as a result of the broken bone. Nurse Lewis has not seen or heard from plaintiff since the surgery. Plaintiff's injury has fully healed and he is in good physical health today. ( Doc 32 Exhibit A).

Dr. Asebiomo stated in his affidavit that even if an x-ray had been provided the day of plaintiff's injury, the course of treatment would have been unchanged. (Doc. 32 Exhibit B ). Specifically, the surgery would not have taken place before May 11, 2009, because of the swelling involved and the risk for wound complications. Dr. Asebiomo stated that Dr. Starling's actions confirm his opinion.(Doc. 32 Exhibit B). Dr. Starling saw plaintiff twice before operating. Both times Dr. Starling noted that he was waiting for the swelling to subside to an acceptable level prior to performing surgery to avoid possible wound complications. Thus, there was no medical necessity to perform the surgery immediately. Finally, Dr. Asebiomo stated that plaintiff has completely healed, further indicating there was no harm in waiting to get an x-ray performed. (Doc. 32 Exhibit B).

"[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." *Hill v. DeKalb RYDC,* 40 F.3d 1176, 1189 (11th Cir.1994), *overruled in part*

*on other grounds, Hope v. Pelter,* 536 U.S. 730, 739(202), 122 S.Ct. 2508, 153 L.Ed.2d 666. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188. To the extent that the plaintiff argues that he required a different course of treatment, including additional treatment by a specialist, additional x-rays, and more or different prescription medications, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir.1991).

This is a classic case of a difference in medical opinion. It is clear that plaintiff received prompt and appropriate medical care, even in the face of plaintiff's argument that he should have received an x-ray immediately. As summarized above, the course of treatment would not have changed even if plaintiff had received an x-ray right away. Defendant Lewis was not deliberately indifferent to plaintiff's serious medical needs, and is therefore entitled to summary judgment.

Therefore, it is the RECOMMENDATION of the undersigned that the motion for summary judgment (Doc. 32) filed on behalf of defendant Nurse Lewis be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 19th day of July, 2010.

                                     S// Thomas Q. Langstaff
                                     THOMAS Q. LANGSTAFF
                                     UNITED STATES MAGISTRATE JUDGE

msd